UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELENORA M. BROWN,

      Plaintiff,

v.

SYLVAN LAKE POLICE OFFICER
JEFFREY FICK, ET AL.,

      Defendants.

                                      /

Case No. 10-11330

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT [26]**

      This action, alleging violations of 42 U.S.C. § 1983, arises out of events that occurred on October 16, 2009, and comes before the Court on Defendants Officer Jeffrey Fick's and City of Sylvan Lake's motion for partial summary judgment.  Plaintiff Eleanora Brown's complaint alleges that Defendants violated her Fourth and Fourteenth Amendment rights and asserts claims of arrest without probable cause, excessive force, and malicious prosecution against Officer Fick and claims of municipal liability against the City of Sylvan Lake.  Defendants' motion for partial summary judgment addresses each of these claims except Plaintiffs' claim of excessive force against Officer Fick.  Plaintiff, in her Response, concedes that her municipal liability claims against the City of Sylvan Lake and her Fourteenth Amendment and malicious prosecution claims against Officer Fick cannot stand.  (Pl.'s Resp. at 1.)  Accordingly, these claims are dismissed with prejudice.  Thus, the sole issue left for the Court to address is whether Plaintiff's Fourth Amendment claim

that she was arrested without probable cause can withstand Defendants' summary judgment motion. For the reasons discussed below, this Court GRANTS Defendants' motion for partial summary judgment.

**I.     Facts**

On October 16, 2009, Plaintiff went to her adult daughter's home in Keego Harbor to clean it. (Defs.' Mot., Ex. 1, Pl.'s 4/27/10 Dep. at 47.) She was getting ready to leave when she heard police sirens. Her 21-year old grandson looked out the window and told Plaintiff that he thought it was his mother returning home. (Pl.'s Dep. at 49.) Plaintiff exited her daughter's home, went to the driveway, and saw her daughter's car and several police cars. (*Id.* at 51-52.)

Officer Fick's deposition testimony explains what occurred before Plaintiff's daughter and officers from Sylvan Lake and Keego Harbor arrived at the daughter's home. On October 16, 2009, Officer Fick responded to a radio request to go to the McDonald's Restaurant across the street from the Sylvan Lake Police Department. The police had received a call that a woman was inside McDonald's acting strangely, that she may have box cutters, and she appeared upset about a McDonald's toy. (Defs.' Mot., Ex. 2, Officer Fick's 10/12/10 Dep. at 31-32.) Officer Fick arrived on the scene as Plaintiff's daughter was walking to her car. He observed that she appeared to be acting abnormally – as if she were on some type of medication. (Fick Dep. at 32-33.) Officer Fick recognized Plaintiff's daughter from an incident that had occurred six months earlier and recalled that she had been on methadone, Xanax, and other prescription drugs. (*Id.* at 41-42.) The daughter consented to a search, no knife was found, and Officer Fick called the West Bloomfield

Police Department. They checked her out and then took her to the hospital for further observation. (*Id.* at 33.)

Later that same day, the Sylvan Lake Police Department received another call from McDonald's telling them that Plaintiff's daughter was back, was in the drive-through lane and was causing problems during the busy lunch-time traffic. (*Id.* at 34.) Officer Fick went back to McDonald's. As he approached the daughter's car, she started to drive away. She was driving right at Officer Fick, but stopped when he put his hands up. He motioned for her to pull into a parking spot in the McDonald's parking lot. As he started to walk towards the parking spot where he had directed her, she drove off onto Orchard Lake Road. Officer Fick had to run to get out of her way. Then, he got into his police car and began to follow her. Additional officers from Keego Harbor joined the chase. (*Id.* at 34-36.) Officer Fick and the Keego Harbor officers stopped Plaintiff's daughter on Hester Court – right down the street from her home. They approached the daughter's car and attempted to open her car door when she drove off again, almost running them over. Her car stopped again on Pridham Street at the entrance to the driveway of her home. The daughter's home is on the corner of Pridham and Hester Streets, with the driveway and garage on Pridham. (*Id.* at 36-38.) Officer Fick and the police officers from Keego Harbor were on Pridham, at the locked, driver's side door of the daughter's car, trying to get her to exit her car so they could arrest her, when Plaintiff appeared on her daughter's driveway. (*Id.* at 44; Defs.' Ex. 4, DVD of police in-car video; Pl.'s Dep. at 54.)

The police in-car video from a Keego Harbor police car shows the initial police chase of the daughter's car down Hester Street. It also shows the daughter's car stop and then start up again when two officers are at her driver's side window. It next shows the

3

daughter's car stopped near the end of the driveway to her home with the passenger side of the car facing the driveway area of her home. The Sylvan Lake police car is parked with its driver's side midsection facing the front end of the daughter's car. It is clear from the video that the cars do not touch.

The next series of events occur in rapid succession. The video shows an officer leave the Sylvan Lake police car. He and two Keego Harbor officers gather at the daughter's driver-side window. One of the officer's breaks the window, the door is opened, and the officers attempt to get the daughter out of her car. As Plaintiff concedes, her voice can be heard on the video. (Pl.'s Resp. at 4.) The Sylvan Lake officer yells to someone up towards the driveway to "Stand back," and he immediately goes out of view. The other two officers are still trying to get the daughter out of her car when it suddenly moves foward, dragging the officers with it. The Sylvan Lake officer is then seen returning to the daughter's car. As she is being pulled from the car by the other two officers, he once again goes out of view. The daughter is then seen outside her car, she is untangled from the seat belt, and her hands are cuffed behind her back. The officers can be seen looking up toward's her driveway, and the daughter says to someone in that direction, "I'm okay." (Defs.' Ex. 4, DVD of police in-car video.)

While on the driveway and close enough for the officers to hear, Plaintiff testified that she called to the officers: "That's my daughter in the car, I'm her mother, please don't hurt her because she's under a doctor's care." (Pl.'s Dep. at 54.) Then one of the officer's "put up his hand and he said, 'Stop and step back, and don't come any closer.'" (*Id.* at 54-55.) Plaintiff stopped and stepped back. She stood in the far corner of the driveway. (*Id.* at 55.) Plaintiff testified that, after the Keego Harbor officers got her daughter out of her car and

took her to one of the Keego Harbor police cars, Officer Fick came running up the driveway, shouting "Stop and step back." (*Id.* at 66-67.) What happened next is important to Plaintiff's Fourth Amendment unreasonable seizure claim:

> A: <u>So I stepped back</u>. <u>And then</u> I think I was a little off balance because – the grading was down on the driveway, and <u>I pulled my foot forward a little bit</u> to brace myself,
>
> And then – . . . – he shouted, "When I give you an order, you take it," or something of that nature. . . . <u>But I just stood there</u>. I didn't know what else to do.
>
> And then he come tearing up to me and he's giving me the same thing. And I said, "I don't know what's wrong with you because I'm not doing anything."
>
> And he says, "When I give you an order, you obey it."
>
> I said, "I did step back."
>
> And then he tried to – to grapple with me and I pulled my arms back a little bit. And then he finally got hold of this wrist and got his handcuffs out. . . .

(*Id.* at 68 (emphasis added).) Plaintiff further testified that:

> A: And then, when I pulled my arms back he said something about being under arrest.
>
> And I said, I think I repeated, "I haven't done anything."
>
> Q: So now you remember him telling you that you're under arrest, correct?
>
> A: Well, after I had asked him, and that, and I said, "For what? I haven't done anything."
>
> And he still insisted on trying to get my wrist, and he did get my wrist.
>
> Q: So he told you that you were under arrest at the – in this process of trying to grab your wrist and you pulling it out – out from under – or out from under his grasp, correct?
>
> A: I was trying to talk to him, and he was – he wasn't listening to anything.

5

> Q: Okay. But getting back to the question that I asked: You were – he was in the process of telling you, you were under arrest, and he was grabbing your wrist when you were pulling it out from his grasp, correct?
>
> A: <u>I was trying to keep it from his grasp, but he got hold of it</u>.
>
> Q: And that's the question I'm asking. He was reaching for your wrist, at the same time telling you that you're under arrest. <u>And during that time, you're trying to pull your wrist away from him, correct?</u>
>
> A: <u>Yes</u>.

(*Id.* at 73-74 (emphasis added).)

Plaintiff was ultimately handcuffed and placed in the back of a police car. (*Id.* at 86-87.) Officer Fick issued Plaintiff a misdemeanor ticket under Section 38-187 of the City of Sylvan Lake Code of Ordinances, which provides that "[i]t shall be unlawful for any person to permit or suffer any place occupied or controlled by such person to be a resort of noisy, boisterous or disorderly persons."

## II.  Analysis

This matter is now before the Court on Defendants' motion for partial summary judgment arguing that Officer Fick had probable cause to arrest Plaintiff for violating either (1) Sylvan Lake's Code of Ordinances, Section 38-31, which makes it "unlawful for any person to resist any police officer, any member of the police department or any person duly empowered with the police authority while in the lawful discharge of his duty, or in any way interfere with or hinder such person in the discharge of his duty;" or (2) a Michigan statute, that makes it a felony if "[a]n individual . . . resists, obstructs . . . a person who the individual knows or has reason to know is performing his or her duties," Mich. Comp. Laws § 750.81d(1), and defines "obstructs" to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command," §

750.81d(7)(a). Plaintiff, in her response, acknowledges that the Supreme Court's decision in *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004), holds that there is no Fourth Amendment violation even if the police officer does not have probable cause for the specific offense charged as long as the arresting officer has probable cause to make an arrest for any violation. (Pl.'s Resp. at 3.) Nonetheless, Plaintiff argues, Defendant Fick violated her Fourth Amendment rights because (1) as a Sylvan Lake police officer, he had no jurisdiction to issue a citation for violating that City's ordinance for an event that occurred in Keego Harbor; and (2) her verbal "speaking out" to the police officers is protected by the First Amendment and is insufficient to provide probable cause for arrest under Michigan's resisting or obstructing arrest statute.

### A. Officer Fick's Authority to Act While in Keego Harbor

The Court begins its analysis by addressing Plaintiff's argument that a Sylvan Lake police office lacks authority to arrest when he is assisting officers in city other than his own. Plaintiff's argument is rejected.

In *Greenan v. Romeo Village Police Department*, 819 F. Supp. 658 (E.D. Mich. 1993), the court rejected the plaintiff's argument that "because the Romeo police officers were not technically within the boundaries of Romeo Village," they "were outside their jurisdiction to arrest," and therefore the plaintiff's "arrest was illegal." *Id.* at 663. The *Greenan* court reasoned that "the Michigan Home-Rule Cities Act provides that police officers have authority to arrest outside their jurisdictional limits if they are acting in conjunction with officers regularly employed to enforce the laws of that jurisdiction." *Id.*

Michigan's Home-Rule Cities Act, Mich. Comp. Laws § 764.2a(1), provides in pertinent part, that:

7

> A peace officer of a . . . city . . . may exercise the authority and powers of a peace officer outside the geographical boundaries of the officer's . . . city . . . under any of the following circumstances:
>
> * * *
>
> (b) If the officer is enforcing the laws of this state in conjunction with a peace officer of any other . . . city . . . in which the officer may be.

Mich. Comp. Laws § 764.2a(1)(b). It is undisputed that Defendant Fick, a police officer employed by the City of Sylvan Lake, arrested Plaintiff in Keego Harbor while working in conjunction with police officers from that city.

Having determined that Officer Fick had authority under Michigan law to arrest Plaintiff in Keego Harbor although he was a police officer from another city, the Court now turns to the question whether he had probable cause to arrest her.

### B. There Was Probable Cause to Arrest Plaintiff

Considering the facts in the light most favorable to Plaintiff, this Court concludes that Defendant Fick had probable cause to arrest Plaintiff under the Sylvan Lake hindering or interfering ordinance, City of Sylvan Lake Code of Ordinances § 38-31, and Michigan's statute making it a felony to resist or obstruct a police officer who is performing his duties, Mich. Comp. Laws § 750.81d.

As the Supreme Court observed in *Devenpeck v. Alford*, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." 543 U.S. at 152. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* "A police officer determines the existence of probable cause by examining the facts and circumstances within his

8

knowledge that are sufficient to inform a prudent person, or one of reasonable caution, that the suspect has committed, is committing, or is about to commit an offense." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (internal quotation marks and citation omitted). Moreover, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153. Stated otherwise, "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* Applying these core principles, the *Devenpeck* Court held that "[t]hose are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 155.

Plaintiff concedes that, under *Devenpeck*'s holding, if Defendant Fick had probable cause to arrest Plaintiff for any offense, then it is irrelevant whether he had probable cause to arrest her on the specific offense for which she was cited. (Pl.'s Resp. at 3.) This Court now considers whether, construing the facts in the light most favorable to Plaintiff, Defendant Fick had probable cause to arrest Plaintiff for any offense.

Defendant Fick argues that he had probable cause to arrest Plaintiff under both the Sylvan Lake hindering or interfering ordinance, § 38-31, and Michigan's statute that makes it a felony to resist, obstruct or oppose a police officer who is performing his duties, Mich. Comp. Laws § 750.81d(1), (7). Plaintiff responds to the contrary. Relying on the statutory definition of "obstruct," Plaintiff argues that, when the facts are construed in her favor, a reasonable juror could not find that she used or threatened the use of "physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7). Accordingly, Plaintiff asserts, probable cause did not exist for her arrest under

9

the Sylvan Lake Ordinance or the Michigan statute Officer Fick relies upon. Moreover, Plaintiff argues, she had a First Amendment right to speak out as she did.

A recent Sixth Circuit decision, *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008), addresses and rejects arguments substantially similar to those raised by Plaintiff here. In *King*, the plaintiff had filed a § 1983 action against a police officer who was questioning a third party when the plaintiff, King, repeatedly told that third party not to speak to the officer. The police officer, Kevin Ambs, subsequently arrested King under a local ordinance for opposing an officer in the performance of his duties and other charges. *Id.* at 608-610. All charges against King were ultimately dismissed. *Id.* at 610. King then filed a § 1983 action against Ambs, alleging that his arrest violated his First and Fourth Amendment rights. *Id.* Ambs' motion for summary judgment was granted. The district court "held that Officer Ambs did not violate King's Fourth Amendment rights because King's verbal interference with the officer's investigation amounted to a 'physical interruption of the questioning,' which provided probable cause for the arrest." *Id.* The district court "concluded that Officer Ambs did not violate King's First Amendment rights because it was 'the fact of the interference' with the performance of police duties rather than the content of King's words themselves that constituted the basis for the arrest." *Id.* In the alternative, the district court held that "a violation of either or both rights . . . would not have been clearly established." *Id.* King appealed that ruling to the Sixth Circuit.

On appeal, the Sixth Circuit affirmed the district court's decision that there was no violation of King's First or Fourth Amendment rights. As to King's Fourth Amendment claim, the Sixth Circuit held that "[b]ecause Officer Ambs had probable cause to arrest King, Officer Ambs did not violate King's Fourth Amendment rights." *Id.* The *King* court rejected

the plaintiff's argument that probable cause to arrest did not exist because his verbal obstruction of Ambs while performing his police duties fell short of the physical obstruction required under Michigan law. *Id.* The court first observed that the language of the city ordinance under which the plaintiff had been arrested was "textually different" than the Michigan statute interpreted by the Michigan Supreme Court in *People v. Vasquez*, 631 N.W.2d 711 (Mich. 2001), and further observed that the appeal pending before the *King* court presented "meaningfully different facts" than those presented in *Vasquez*. *Id.* The same is true here.

Similar to the city ordinance in *King*, the Sylvan Lake ordinance at issue here is "textually different" than the resisting and obstructing statute at issue in *Vasquez*. The list of terms in the City of Sylvan Lake Ordinance, § 38-31, "in any way interfere with or hinder," similarly "presents a less apparently physical context in which to interpret" the prohibited conduct. *Id.* at 611. In fact, the Sylvan Lake Ordinance does not use the term "obstruct" and thus cannot be limited by either the *Vasquez* court's interpretation of that term or the statutory definition in Michigan's resisting and obstructing statute, Mich. Comp. Laws § 750.81d(7)(a). Moreover, similar to *King*, the conduct that gives rise to Plaintiff's arrest "is very different than the conduct at issue in *Vasquez*." *Id.* "The defendant in *Vasquez* was charged with obstruction because, after he was arrested, it was discovered that he had given the police a false name and age." *Id.* The facts in this case are closer to those in *King*. There, King "was arrested after repeatedly interrupting an officer who was questioning a third party . . . . and amounted to a physical interruption of the questioning." *Id.* (internal quotation marks and citation omitted). Here, Plaintiff was arrested after

11

interrupting Officer Fick and the two Keego Harbor officers who were trying to arrest her daughter who had twice fled from the police.

It is well-established that the court must consider the facts known to the arresting officer at the time of Plaintiff's arrest. *See Devenpeck*, 543 U.S. at 152, 155. Officer Fick, along with the two Keego Harbor police officers, was attempting to get Plaintiff's daughter out of her car and arrest her. It was a tense situation, as Plaintiff's daughter had already fled from the police twice. Plaintiff interrupted the officers while they were attempting to arrest her daughter. She testifies that she exited her daughter's home and came down the driveway toward the officers, close enough for them to hear, and yelled to them not to hurt her daughter. In the middle of the officers' attempt to get the daughter out of her car, Officer Fick had to stop what he was doing, had to tell Plaintiff to stand back, and had to leave the other two officers that were dealing with Plaintiff's daughter so he could deal with Plaintiff. From the video, it is clear that Officer Fick quickly returned to the daughter's car because it began moving again and was dragging the two Keego Harbor officers with it. When Officer Fick later approached Plaintiff, she admits that, although she stepped back as he again commanded, she then moved her foot forward to balance herself. She testified that Officer Fick told her that when he gives her an order she is to follow it. Despite these orders, Plaintiff testified that she still just stood there, all the while arguing to Officer Fick that she had done nothing wrong. (Pl.'s Dep. at 54-55, 66-68, 73-74.) These known facts provide Officer Fick with probable cause to arrest Plaintiff. When he attempted to do so, Plaintiff resisted by pulling her wrist from his grasp.

Applying the principles asserted in *King*, Plaintiff's admitted conduct -- verbal interruption while physically approaching the officers during their lawful attempt to arrest

12

her daughter as well as a subsequent step forward to balance herself despite Officer Fick's commands to stand back -- is "sufficiently 'physical'" even under the interpretation of the term "obstruct" in Michigan's resisting and obstructing statute and thus provides probable cause to arrest under that statute, Mich. Comp. Laws § 750.81d(1), (7), and under the City of Sylvan Lake Code of Ordinances, § 38-31. *See King*, 519 F.3d at 611. Plaintiff's physical interruption of Officer Fick and the other two officers' attempt to lawfully arrest her daughter made it more difficult for them to carry out their duties.

Even if Plaintiff's conduct was found to be insufficiently physical to provide probable cause to arrest under either the Ordinance or the Michigan statute, Officer Fick would still be entitled to qualified immunity. The Supreme Court has held that for a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In light of the Sixth Circuit's decision in *King*, at the time of Plaintiff's arrest and under Plaintiff's version of the facts, it was not clearly established that Plaintiff's interruption of her daughter's lawful arrest would not be sufficiently physical to provide probable cause to arrest under either the Sylvan Lake Ordinance or the Michigan statute addressed above.

## III. Conclusion

For the above-stated reasons, Defendants' motion for partial summary judgment is granted. The sole remaining claim in this action is Plaintiff's Fourth Amendment, excessive

force claim against Defendant Officer Fick.

<div style="margin-left: 2em;">

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

</div>

Dated:  February 10, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 10, 2011, by electronic and/or ordinary mail.

<div style="margin-left: 2em;">

s/Carol A. Hemeyer
Case Manager

</div>